ROBINSON v. HAYDEL et al.

(Division B.   Dec. 7, 1936.)

[171 So. 7.   No. 32432.]

234

Mize, Thompson & Mize, of Gulfport, for appellant.

236

238

**R. A. Wallace,** of Gulfport, for appellees.

240

242

**Anderson, J.,** delivered the opinion of the court.

Appellant brought this action in the circuit court of Harrison county against appellees to recover damages for a personal injury received by him as the result of a collision between his automobile driven by him and a truck driven by appellee Cody in the pursuance of his duty as a servant of appellee Haydel, and alleged to have been caused through the negligence of Cody. The trial resulted in a verdict and judgment in favor of appellees, and from that judgment appellant prosecutes this appeal.

The collision occurred on Tenth street in the city of Gulfport. The streets in Gulfport run east and west and are numbered from south to north, while the avenues run north and south and are numbered from east to west. Appellant's home is in the middle of the block on the north side of Tenth street between Thirty Sixth and

Thirty Seventh avenues. About twelve o'clock noon appellant left his place of business in the city to go to his home for lunch. He made the trip in his automobile and drove west on Tenth street, stopping his car, facing west, in front of his residence. After lunch he came out to go back to his business. It was more convenient for him to turn around and go back east to Thirty Sixth avenue than to go west to Thirty Seventh avenue; he undertook to make the turn, and while about the middle of the street his car was struck by the truck driven by appellee Cody, going west, resulting in his injury and damage to his car.

Appellant testified that before making the turn he looked in his rear view mirror and saw appellee Cody approaching in the truck, and that, if the truck had been going at a reasonable rate of speed, he had ample time to make the turn and face east; but that it turned out that the truck was going at a high rate of speed, from forty-five to fifty miles an hour. Appellee Cody testified that he was traveling about twenty-five miles an hour; that he did not see appellant in his automobile; that suddenly, without giving any signal with his hand or his horn, appellant lunged his car into the middle of the street in an effort to turn completely around; and that, being thus suddenly confronted by the danger, he made every effort at his command to avoid the collision, but was unable to do so.

The case largely depends on the proper construction of the traffic ordinances of the city of Gulfport and section 5569 in connection with section 5588 of the motor vehicle chapter of the Code of 1930. The ordinance provisions involved are as follows: One section defines what part of the city shall be treated as the "business district." Tenth street is not included in the business district. Another section fixes the maximum speed limit in the business district at twenty miles per hour and not more than ten miles in turning corners or passing street

crossings, and not more than thirty miles per hour on any street. Another section prohibits the turning of motor vehicles so as to change their course except at street intersections. Another section requires that in slowing down, or suddenly stopping, or turning a motor vehicle, a signal shall be given by extending the hand and sounding the horn, and that a similar signal shall be given in pulling out from the curb of the street so as to notify drivers of cars approaching from behind. The speed limit, therefore, in the city, outside of the business district, is thirty miles an hour.

The evidence for appellant tended to show that Tenth street, although not in the business district, is closely built up with residences, and invoked the application of section 5569, Code of 1930, which follows:

"No person shall operate a motor vehicle on a public highway, or street, avenue or alley of any city, town or village in this state at a greater rate of speed than is reasonable and proper, having due regard to the traffic and, use of the highway; or so as to endanger the life or limb of any person or the safety of any property; or in any event on any public highway where the territory contiguous thereto is closely built up, at a greater rate of speed than twenty miles per hour, or elsewhere in any municipality at a greater rate of speed than twenty miles per hour, or elsewhere outside of any municipality at a greater rate of speed than forty miles per hour, but trucks shall not in any event operate at a greater rate of speed than thirty miles per hour. Provided, that the governing authorities in municipalities, may prescribe the traffic rules within the corporate limits of the municipality and regulate the speed and fix the speed limit at which motor vehicles may be operated within the corporate limits, or any part thereof, by an ordinance setting out the traffic rules and declaring what rate of speed shall be reasonable and proper, but the speed limit so fixed within the municipality shall not be greater than

thirty nor less than ten miles per hour, provided that all municipalities shall place signs, at points where the main highways enter, showing the speed limit fixed for the municipality."

Section 5588 of the Code makes a violation of this statute negligence.

It will be observed that the statute fixes the maximum speed limit in municipalities where the territory contiguous to the streets is closely built up at twenty miles an hour, while the ordinance fixes the maximum limit at thirty miles an hour. Appellee Cody admitted he was traveling more than twenty miles an hour. The court refused instructions requested by appellant informing the jury that the maximum speed limit on Tenth street was twenty miles an hour and, if appellee Cody was driving faster, then he was guilty of negligence. These instructions were requested on the theory that the maximum speed limit fixed in section 5569 of the Code controlled instead of the ordinance. The trial court necessarily, and we think rightfully, held to the contrary. The proviso of section 5569 modifies what goes before, so far as municipalities are concerned; it expressly empowers municipalities to fix the speed limit within their boundaries, or any part thereof, by ordinance, "setting out the traffic rules and declaring what rate of speed shall be reasonable and proper, but the speed limit so fixed within the municipality shall not be greater than thirty nor less than ten miles per hour." Where a municipality takes no action, the statute, leaving out the proviso, controls; where it does act, under the proviso the ordinance controls. The result is that, although the maximum speed limit on a thickly built-up highway in the country is twenty miles an hour, in municipalities under the proviso of the statute it may be thirty miles an hour. There is a reason for the difference—there is no police protection in the country and there is in the municipalities. It follows from these views that the

court committed no error in refusing appellant's instructions based on the theory of a maximum limit of twenty miles an hour.

The court refused an instruction for appellant that it was the duty of appellee Cody to operate the truck at a "safe rate of speed." There was no error in so doing. Safe rate of speed is not the requirement of the law; it is only "reasonably safe rate" that the law requires.

The refusal of appellant's instruction embodying the principle of contributory negligence was justified because the court gave appellant one instruction embodying that principle; that was all he was entitled to.

Appellant complains that the giving of certain instructions for appellees was error. We do not think the contention has sufficient foundation to require a discussion by the court, except as to one. The evidence showed that Dr. Hewes attended appellant after his injury. He was not introduced by appellant as a witness. Under the privileged communications statute, section 1536, Code of 1930, Dr. Hewes was not available as a witness for appellees; he was, of course, for appellant. The court instructed the jury for appellees that, if they believed from the evidence that Dr. Hewes treated appellant for the injury, and that he was accessible to appellant as a witness, the fact that appellant did not use him as such "may create a presumption that if he were introduced as a witness his testimony would be unfavorable to the plaintiff." Appellant argues that the giving of this instruction, in effect, abolished the protection of the privileged communications statute. We do not think so. Beard v. Williams, 172 Miss. 880, 161 So. 750. In this respect the physician stands like any other material witness who is available to and can be produced by only one of the parties. The rule is that the failure of a party to produce a witness, which he can do and his adversary cannot, who knows the facts, if any one does, raises the presumption that such facts do not

248

exist. Anderson v. Cumberland Telephone & Telegraph Co., 86 Miss. 341, 38 So. 786; Bunckley v. Jones, 79 Miss. 1, 29 So. 1000; Calhoun v. Burnett, 40 Miss. 599.

Affirmed.