HENSON FORD, INC., et al. *v.* CREWS

No. 42859        February 3, 1964        160 So. 2d 81

*Simrall, Aultman & Pope,* Hattiesburg, for appellants.

48

*Wm. E. Andrews, Jr.,* Purvis, for appellee.

BRADY, TOM P., J.

This case comes to us on appeal from a verdict and judgment in the sum of $22,500 from the Circuit Court of Lamar County, Mississippi. E. N. Crews, appellee, plaintiff in the trial court, sued Henson Ford, Inc. and Arnold Lowe, appellants, defendants below, charging appellant Lowe, a servant of Henson Ford, Inc., who was acting in furtherance of his master's business and within his scope of employment with the negligent operation of an automobile belonging to appellant Henson Ford, Inc. and being driven by Arnold Lowe in a dangerous, careless, unlawful and negligent manner so that said automobile ran into the back end of a 1948 Chevrolet

pickup truck being operated by the appellee, causing the injuries complained of, which will hereinafter be considered. The appellant denied the material allegations of negligence asserted by the appellee and charged that the sole and proximate cause of the collision and the injuries resulting therefrom was the negligent stopping on the blacktop road of the 1948 Chevrolet pickup truck by the appellee. The pleadings clearly established sharp conflicts as to the negligence which actually was the proximate cause of the accident.

The evidence submitted in the trial of the case clearly discloses the following essential facts: On Wednesday, September 5, 1962, about 6:20 P. M., the appellant, Arnold Lowe, employee of Henson Ford, Inc., was operating an automobile in the scope of his employment, which was owned by the co-appellant Henson Ford, Inc., on and over a county road in District 4 of Lamar County, Mississippi, commonly known as the Richburg-Oak Grove public road. This road is made of blacktopping, slippery when wet, and is actually eighteen feet in width. It had been raining and was misting and raining at the time of the accident. Visibility was poor, due to the rain and mist, and it was dusk, and dark enough for it to be necessary for the headlights of the cars involved to be turned on.

On the east side of the road where the collision occurred, the shoulder is approximately three feet in width, and on the west side of the road the shoulder is five feet in width. The road at the point of the collision runs a little northwest and southeast. On the east side of the road approximately 150 feet south of the scene of the wreck is located the home of one Calab Hartfield. The road south of the point of collision curves, and this curve is located between 215 to 440 yards south of the point of collision. The record discloses that this curve straightens out as it goes north, and that in front of the Hartfield home the road is straight, and the road remains straight proceeding northward for a distance

of 150 to 200 yards before it again curves. The appellee on the day in question was driving a pickup truck belonging to his employer, Conolly Motor Sales, and had driven said truck northward approximately 35 yards beyond a mailbox situated near the shoulder of the road on the east side thereof and in front of the Hartfield home. The appellee saw Calab Hartfield and two of his sons in the front yard of said home and brought his truck to a stop for the purpose of backing up and talking to one of Mr. Hartfield's sons about the sale of a motor vehicle. As he started to back up, he saw the headlights of appellant Lowe's car approaching, and he put the truck in low gear and was moving forward at a speed of approximately 10 to 15 miles per hour when appellant Lowe's car ran into the back of appellee's truck. Appellant Lowe testified, as he had pled, that the visibility was poor because of the rain and mist, and that he was not able to detect the presence of the truck which had stopped in the road until he was within fifty yards of the truck, when his car had rounded the curve and his lights shined upon it, that appellee's lights were not on, and there were no reflectors on the back of the truck. Appellant Lowe admitted that he was operating the car around forty miles an hour, but the record discloses that he was operating the car between 40 and 50 miles per hour. Appellant Lowe further admits that his car skidded 35 steps, but the record indicates that it skidded between 35 and 50 yards before striking the truck occupied by appellee. Appellant Lowe testified that appellee's truck was partially in the east and west lane so that he could not go around on either side of the truck, and that appellee's act in so stopping the truck under these conditions was the sole, proximate cause of the collision. The record shows the impact of the car drove the appellee's truck into a ditch on the east and right side of the road, approximately 25 feet from the point of collision. Appellant Lowe's car stop-

ped at about a right angle and toward the left and in the west lane and middle of the road. Appellant received bruises and contusions which were not serious, but the record discloses that appellee was thrown out of the truck through the left door which was open, or came open after the collision, and sustained the hereinafter mentioned injuries. Appellee was unconscious approximately forty-five minutes. He was taken by ambulance to the Forrest County Hospital, where he remained overnight and was discharged the following day.

Viewing the testimony most favorable for the appellee, the record discloses the following injuries and suffering: At the time of the accident, appellee was suffering from a pre-existing condition of amblyopia of the left eye, which is an inherited defect appellee had from childhood. The positive medical testimony of Dr. Robert P. Vincent was to the effect that appellee's vision, with correction, was 20/29 in the right eye and 20/22 in the left eye; that apparently his left eye was injured in the accident, which also corroborates appellee's testimony; that appellee struck his head on the asphalt at the time of the collision and sustained a four-inch jagged wound on the left side of his head over the left parietal bone which required some sutures to close. There was a fracture of appellee's left clavicle, with no displacement. There were also general lacerations, abrasions, contusions and a concussion. The other positive findings of the doctors were that the appellee suffers from a fifteen per cent deterioration from normal hearing in the left ear which had increased to approximately twenty-five per cent by January 23, 1963. The doctor conceded, however, that a ten per cent differential in the tonal range of hearing is quite normal. In addition to these injuries, the appellee suffered from positional type headaches, positional dizziness, and from double vision. The testimony of the doctors also shows that in cases of brain concussion, a period of one year to eigh-

teen months is usually required for the purpose of observation and evaluation before any positive determination can be made as to the extent or the existence of any permanent disability, and for the complete recovery of the patient.

The entire hospital and medical expenses incurred by appellee amounted to $66.50. The doctor bills, however, including the cost of an electroencephalogram in the sum of $25, amounted to $731.52, so that all expenses, hospital X-rays and doctors bills, made a grand total of $797.02. The proof in this case shows that the appellee was making an average of $75 per week and that he lost this earning from September 5, 1962, until the middle of December 1962, at which time Drs. Emmett Herring and Willis Walker, Jr. discharged plaintiff, thereby terminating his workmen's compensation payments and medical expenses allowed under the terms and provisions of the Workmen's Compensation Act which amounted to $714.89. The Westchester Fire Insurance Company was the intervenor in the suit in the trial court, and by way of subrogation a judgment was taken for said intervenor in the sum of $714.89 to be paid first out of the proceeds of the first $1,500 of the judgment obtained by the appellee against the appellants.

The appellants filed a motion for a judgment non obstante veredicto, setting up in substance the same grounds which are now urged by appellants in their assignment of errors. The trial court overruled and denied this motion, and thereupon appellants filed a motion to vacate and set aside the verdict and judgment to grant a new trial. This motion was likewise overruled, and this appeal was properly perfected to this Court.

There are seven assignments of error urged by appellants, and out of deference to counsel representing appellants, we shall summarize the basic grounds of

these objections, but our attention will largely be directed to those assignments which, under the facts and applicable rules of law, we feel merit consideration and discussion. All of the assignments of error can be reduced to these basic complaints: (1) That the court erred in refusing to grant (A) appellant's motion for a judgment non obstante veredicto; (B) in refusing to set aside the verdict and judgment and awarding a new trial for the reason (a) that verdict and judgment was so far in excess of actual damages proved by appellee as to indicate (b) the jury wholly disregarded the clear and credible evidence and instructions of the court, and (c) for the reason the amount of the verdict and judgment of the jury was so far in excess of actual damage as to evince bias, passion and prejudice; (2) That the court erred in refusing to permit appellants to develop the medical testimony of Dr. Robert P. Vincent pertaining to certain medical reports in his possession from Dr. Willis Walker, Jr. and Dr. Emmett Herring, which reports formed and constituted a part of the medical history in the possession of Dr. Robert P. Vincent and Dr. L. Z. Broadus, and which said medical reports were used as a basis for forming their opinion; And (3) the court erred in refusing to allow the appellant to introduce the testimony of Drs. Willis Walker, Jr. and Emmett Herring, attending physicians, for the reason that the workmen's compensation carrier of Conolly Motor Sales Company, employer of appellee, the Westchester Fire Insurance Company, had intervened and was a party to said cause, and under the Workmen's Compensation Laws of the State of Mississippi, the privilege existing between the doctors and the appellee had been waived; (4) Because the court erred in refusing to grant or deny certain requested instructions by appellants and for granting certain instructions requested by appellee; (5) Because the verdict of the jury is improper as to form and content.

Considering the errors assigned in granting, or refusing to grant, certain instructions requested by the appellants and the appellee, we feel, after a careful review of all of the instructions given in this case to both appellants and appellee, that the principles of law involved in the trial of this case were accurately stated. Both appellants and appellee received instructions submitting to the jury the question of the sole and proximate cause of the injury and the question of any and all contributory negligence on the part of appellee or appellants. We do not feel there is any merit in the fifth assignment urged by the appellants, which is the effect that the unnumbered instruction located on page 175 of the record by the appellants was neither marked "given or refused" by the court. The instruction which was given to the appellants should not have been given at all for the reason that there is no evidence or testimony to show that the accident or collision complained of in this suit occurred within a business or residential district or upon a state highway. If the instruction should have been given, it was still incumbent upon the appellants to make objections or take specific exceptions to the failure of the court to grant the instruction and to mark it "given", which objection or exception should have also been included in a motion for a new trial as a ground therefor. ██ █ This Court has held that it will not take notice of a request for instructions unless exceptions have been duly taken to the action of the trial court below in regard to them, ██ █ and furthermore that unless the instruction is marked "given" by the clerk and not signed by the clerk will be considered on appeal in the absence of the instruction being made a part of the record by a bill of exception. Barney v. Scherling, 40 Miss. 320; Hansford v. State, 11 So. 106 (Miss.); Swann v. West, et al., 41 Miss. 104. ██ █ The failure of appellants to obtain the use of this instruction to which they were not en-

titled cannot therefore constitute reversible error, and particularly is this true since the other instructions received by appellants accurately and amply present the rules of law applicable in this case.

■■ ■ For the same above-stated reasons, we do not feel that reversible error was committed by granting to the appellee the instruction complained of on page 197 of the record which relates to the burden of proving any affirmative defense being upon the defendants. This instruction is substantially the same insofar as form is concerned as the instruction located in Alexander's Miss. Jury Instructions, § 434, at p. 129. The appellee having met the burden of proving his case by a preponderance of the evidence, the burden of the affirmative defense thereupon shifted or fell upon the defendants, and we feel therefore that the granting of said instruction does not constitute reversible error. Lamar v. Williams, 39 Miss. 342; Gaskin v. Davis, et al., 246 Miss. 166, 149 So. 2d 850. Finally, taking all of the instructions given and considering them as one, we feel the jury was furnished a correct and sufficient guide. Greyhound Corporation v. Kindle, 240 Miss. 702, 128 So. 2d 567.

■■ ■ Insofar as the error relating to the form of the verdict being improper is concerned, appellant contends that the verdict itself indicates that the jury wholly disregarded the proper instructions, said verdict being as follows: "We, the Jury, find for the plaintiff. Twelve men for the plaintiff, eleven men recommended $22,500." We do not feel that the verdict of the jury was so improper as to violate the test recognized by this Court, or exceed the provisions of § 1518 of the Miss. Code of 1942, Recompiled. That portion of said § 1518 which applies is as follows: "No special form of verdict is required, and where there has been a substantial compliance with the requirements of the law in rendering a verdict, a judgment shall not be arrested or reversed for mere want of form therein." ■■ ■

The basic test with reference to whether or not a verdict is sufficient as to form is whether or not it is an intelligent answer to the issues submitted to the jury and expressed so that the intent of the jury can be understood by the court. This well-established rule of law has long been recognized by this Court, and we feel that the verdict, though it could have been revised or reformed at appellant's instance, is, nevertheless, sufficient in form to comply with the said statutory requirements. 64 C. J. 1067; Benedict v. The State, 14 Wisc. 423; Vol. 1, Chitty's Criminal Law, p. 635; Hill v. Columbus Ice Cream & Creamery Company, 230 Miss. 634, 93 So. 2d 634; Illinois Central R. R. Co., et al. v. Perkins, Admr., 223 Miss. 891, 79 So. 2d 459; Johns v. State, 78 Miss. 663, 29 So. 401.

██ █ Finally, the error assigned which has given this Court the greatest concern is that the amount of the verdict and judgment was so far in excess of the actual damages proven as to evince bias, passion and/or prejudice on the part of the jury and was so far in excess of the actual damages proved as to shock the enlightened conscience of reasonable men. It is to be noted that this same error is assigned as one of the grounds for which a new trial was sought, and is also urged as proof of another error committed, namely, that the jury wholly disregarded the instructions and the credible evidence, thereby also entitling the appellants to a new trial. We have hereinabove digested the injuries, hospital, medical and doctors' expenses incurred by the appellee, but briefly analyzing this evidence again, we find that the fifty-four year old appellee suffered permanent loss of hearing and injury to his eyes. He sustained a four-inch jagged wound on the left side of his head over the left parietal bone which required sutures to close, leaving a scar.

Appellee sustained a fracture of the left clavicle, with no displacements. There were general lacerations to the body, including knees and elbows, abrasions, con-

tusions and a concussion. These injuries occasioned positional type headaches and positional dizziness, together with some double vision. The X-ray pictures and electroencephalogram were apparently negative. Proof indicates that the appellee was making an average of $75 per week at the time of the injury on September 5, 1962, and that he lost this earning capacity from said date to the 7th day of February 1963 which was the date of the trial of the case in the circuit court. This contradicts the prognosis of the doctors of the compensation carrier that he could resume his work during the middle of December 1962. The record discloses further that the grand total of all of his hospital, doctors and medical expenses totaled $797.02. The record discloses that this appellee was hospitalized for only approximately twenty-four hours, in spite of the injuries now claimed. Briefs of counsel representing appellants and appellee are thorough, particularly with reference to the question of whether or not damages in this case are excessive, or so excessive as to evince bias, passion or prejudice. While this Court has stated and reiterated the general rule that it will not substitute its judgment for that of the jury in the amount of damages unless the verdict is palpably excessive; General Benevolent Association, Inc. v. Fowler, 210 Miss. 578, 50 So. 2d 137; Chapman v. Powers, 150 Miss. 687, 116 So. 609; Gatlin v. Allen, 203 Miss. 135, 32 So. 2d 304; J. C. Penney & Company v. Evans, 172 Miss. 900, 160 So. 779; Reed v. Eubanks, Admr., etc., 232 Miss. 27, 98 So. 2d 132; nevertheless, we have also consistently held that when the verdict is grossly excessive under the testimony so as to evince passion, prejudice and bias on the part of the jury that this Court can require that the case be remanded for a new trial as to damages only so that a verdict can be obtained which is free from passion, prejudice and bias.

It is to be noted that the jury was properly instructed in this case that the appellee was not entitled

to recover anything by way of punitive damages and therefore the damages awarded in this case to the appellee are necessarily restricted to actual damages. The appellee in this case remained unconscious for approximately forty-five minutes following the accident, and it is true that he suffered a concussion but the amount of the damages awarded are far in excess of the damages actually shown by the evidence produced by the appellee and his doctors in the trial court. Furthermore, the verdict in this case is not in line with the verdicts which we have permitted to stand in cases in which the appellees sustained more serious injuries than were sustained by the appellee in the case at bar. See S. H. Kress & Company v. Sharp, 156 Miss. 693, 126 So. 650; Miss. Power & Light Company v. McCormick, 175 Miss. 337, 166 So. 534; Billups Petroleum Company v. Entrekin, 209 Miss. 302, 46 So. 2d 781; Thomas v. Mickel, 214 Miss. 176, 58 So. 2d 494; American Creosote Works, Inc., et al. v. Smith, 233 Miss. 892, 103 So. 2d 861; Shearron v. Shearron, 219 Miss. 27, 68 So. 2d 71; Cooley & Quinn Drug & Chemical Company v. Fillyaw, 242 Miss. 51, 134 So. 2d 153; Index Drilling Co., Inc. v. Williams, 242 Miss. 775, 137 So. 2d 525; Gulf, Mobile & Ohio R. R. Company v. Hawthorne, 225 Miss. 1, 82 So. 2d 454; Louisville & Nashville R. R. Company v. Price, 243 Miss. 99, 137 So. 2d 787; Koestler v. Burton, 207 Miss. 40, 41 So. 2d 362; Cherry, d.b.a. Sun-Rise Rice Farm v. Hawkins, 243 Miss. 392, 137 So. 2d 815; Rayner v. Lindsey, Admr., etc., 243 Miss. 824, 138 So. 2d 902; Kincade and Loftin v. Stephens, 50 So. 2d 587 (Miss.); Reid, et al. v. Middleton, 241 Miss. 324, 130 So. 2d 554; Fowler Butane Gas Company v. Varner, 244 Miss. 130, 141 So. 2d 226. We feel therefore that this verdict is excessive and that it does evince bias, passion and prejudice on the part of the jury. The record contains almost no testimony insofar as pain, suffering or mental anguish is concerned.

Furthermore, since testimony in this case indicates that an interim of one year to eighteen months is necessary in cases of this kind before a final evaluation and positive determination can be made as to the extent or the existence of any permanent disability, and also before the complete recovery of the patient can be determined, it would seem that the wise procedure would be to reverse and remand this case for trial in the court below as to damages only since a year has now elapsed since the injuries were received. This case is therefore reversed and remanded on the question of damages only. Provided, however, a remittitur of $7,500 is entered, then the cause will be affirmed for the amount of the judgment, less the remittitur.

Affirmed on liability, but reversed and remanded for a new trial unless remittitur, as above-stated, is entered by the appellee within the time allowed for the filing of suggestion of error.

*Lee, C. J., and Gillespie, McElroy and Jones, JJ.,* concur.